UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER RODRIGUEZ,<br> *Plaintiff*, | :<br>:<br>: |
| v. | :  3:23-CV-1258 (SVN) |
| ROBERT F. DWYER JR., *et al.*,<br> *Defendants*. | :<br>:<br>: |

## INITIAL REVIEW ORDER

Plaintiff Christopher Rodriguez, a sentenced inmate in the custody of the Connecticut Department of Correction ("DOC") housed at MacDougall-Walker Correctional Institution ("MacDougall CI"), filed this *pro se* civil rights complaint under 42 U.S.C. § 1983.[1] Compl., ECF No. 1. Plaintiff asserts violations of his rights under the United States Constitution against Special Public Defender Robert F. Dwyer, Jr, Connecticut State Marshals John Ro[2] and Ms. Muller, State Investigator Chrostowski, and MacDougall CI Medical Provider Akina Richard. Plaintiff sues Defendants for violations of his rights under the Fourteenth and Eighth Amendments, and for liability under Connecticut state law for assault. He requests both damages and injunctive relief from Defendants in their individual and official capacities.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). A search on the publicly available DOC website under the inmate search function using Plaintiff's inmate number, 230564, shows that Plaintiff was admitted to DOC on November 4, 2018, and sentenced on August 29, 2022, to a term of seventeen years of incarceration.
http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=230564 (last accessed December 14, 2023). On the dates of the events described in the complaint—May 4–6, 2022—Plaintiff was a pretrial detainee. *See* Compl. ¶ 10.
[2] According to Plaintiff, John Ro is this Defendant's true name, *not* a John Doe name. Compl. at 1.

be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

## I.     BACKGROUND

The Court does not include herein all of the allegations from the complaint but summarizes the facts to provide a context to this initial review.

On May 4, 2022, Plaintiff was at his criminal trial at the Superior Court in New Britain, Connecticut. Compl. ¶ 11. During the prosecutor's closing argument, Plaintiff asked his attorney, Robert Dwyer, to correct the prosecutor, who had mistakenly referred to Plaintiff's biological daughter as his step-granddaughter. *Id.* ¶¶ 12–13. Attorney Dwyer refused to correct the alleged error. *Id.* ¶ 14.

When Plaintiff heard the prosecutor make the same misstatement again, Plaintiff spoke up in the courtroom to correct the alleged error. *Id.* ¶¶ 15–16. Immediately thereafter, Attorney Dwyer jumped from his seat, covered Plaintiff's mouth and nose, and pushed Plaintiff's head back. *Id.* ¶ 17. Marshal Ro grabbed Plaintiff from behind and placed him in a chokehold, which caused Plaintiff to fall backwards into his chair. *Id.* ¶¶ 18–19. Plaintiff was bent backwards and felt a sharp pain going through his back and into his hip. *Id.* ¶ 21. His leg shackle broke from his ankle due to the force. *Id.* ¶ 20. Investigator Chrostowski and Marshal Muller also assisted in assaulting Plaintiff. *Id.* ¶ 22.

After his return to the DOC facility, Plaintiff asked for medical attention, but his request was denied. *Id.* ¶ 26. When Plaintiff returned to court the following day, he asked for medical

assistance. *Id.* ¶¶ 27–28. A lieutenant stated that Plaintiff's attorney wanted to speak with him before he would be transported to a hospital. *Id.* ¶¶ 29–30. After Plaintiff explained that he was displeased with the way Attorney Dwyer had tried to silence Plaintiff, Attorney Dwyer told Plaintiff to "shut up" about the incident. *Id.* ¶¶ 31–32. Plaintiff was then transported to a hospital where he was diagnosed with a lower back injury and a hip contusion. *Id.* ¶¶ 33–34. On May 6, 2022, the Connecticut State Police commenced an investigation into the incident. *Id.* ¶ 35.

Despite his many requests, his medical provider, Akina Richard, has not provided him with medical care for the pain caused by the incident on May 4, 2022. *Id.* ¶¶ 36–38.

Plaintiff seeks an injunction ordering Richard to evaluate Plaintiff and treat his medical needs, including by referring him to an outside specialist if necessary, and compensatory and punitive damages against all Defendants. *Id.* at 6.

**II.     DISCUSSION**

The Court construes Plaintiff's allegations as raising constitutional claims of excessive force and deliberate indifference to his health and safety in violation of the Eighth and Fourteenth Amendments; First Amendment retaliation; and state law claims of assault and battery.

    A.  Excessive Force Claims

Plaintiff asserts claims of excessive force against Attorney Dwyer, Marshals Ro and Muller, and Investigator Chrostowski arising from the alleged assault during his state criminal trial. The Court considers only whether Plaintiff has alleged excessive force claims against Defendants in their individual capacities for damages. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (holding that claims based on constitutional violations for money damages against state employee defendants in their official capacities are barred by the Eleventh Amendment).

*1. Attorney Dwyer*

As a preliminary matter, any claim under section 1983 against Attorney Dwyer is not cognizable because Dwyer is not a state actor for purposes of section 1983, nor does any exception apply.

"Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert,* 526 U.S. 286, 290 (1999) (citing 42 U.S.C. § 1983). Accordingly, a plaintiff must show a violation of a federally protected constitutional or statutory right which was the result of state action, or action "under color of law." *See Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir. 1994). A court-appointed attorney "performing a lawyer's traditional functions as counsel" to a party is not a state actor under section 1983. *Kaminski v. Semple*, 796 F. App'x 36, 39 (2d Cir. 2019) (summary order), *cert. denied*, 141 S. Ct. 434 (2020); *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir. 1997); *Barfield v. Milling*, No. 3:14-CV-914 (VAB), 2015 WL 1737671, at *4 (D. Conn. Apr. 16, 2015) (collecting cases). Likewise, an attorney who serves as a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a criminal defendant. *Polk Cnty. v. Dodson*, 454 U.S. 312, 318–19 (1981). Accordingly, Plaintiff cannot state a cognizable claim under section 1983 against Attorney Dwyer.

Although Attorney Dwyer, as a private attorney, would not generally be liable under section 1983, the Court considers whether Plaintiff may bring his claims against him on the basis of any alleged conduct that may be considered state action. *See United States v. International Brotherhood of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his

4

constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'").

To show that the actions of a private party may be attributable to the state, thereby making the private party subject to liability under section 1983, the plaintiff must show: "(1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State." *Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009) (summary order) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

Plaintiff has not alleged facts to show that Attorney Dwyer engaged in conduct that could be considered fairly attributable to the state. No allegation suggests that Attorney Dwyer was compelled by the State to take the actions of which Plaintiff complains; that there was a sufficiently close nexus between the State and Attorney Dwyer's conduct; or that the conduct consisted of activity that has traditionally been the exclusive prerogative of the State. *See Hogan*, 346 F. App'x at 629.[3]

Accordingly, Plaintiff's section 1983 claims against Attorney Dwyer are dismissed pursuant to section 1915A.

---

[3] Nor can Plaintiff's allegations even generously be construed as alleging that Dwyer engaged in a conspiracy with state actors. *See Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 940 (E.D.N.Y. 1999) (allegations of conspiracy can be neither vague nor conclusory, but must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy."); *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002). ("[C]onclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights" are insufficient.).

### *2. Defendants Ro, Muller, and Chrostowski*

Plaintiff's allegations are, however, sufficient to suggest that State Marshals Ro and Muller and State Investigator Chrostowski are state actors for purposes of section 1983, so the Court proceeds to consider whether the complaint alleges a claim against them.

The Due Process Clause of the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 251–52 (2d Cir. 2020) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). A pretrial detainee can show that an officer's actions constitute punishment if the actions were "taken with 'an expressed intent to punish'" or if "the actions are not rationally related to a legitimate nonpunitive governmental purpose" or "appear excessive in relation to that purpose." *Id.* (first quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979), and then quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). Whether an officer used excessive force depends on whether he acted objectively reasonably based on the face and circumstances of the case, viewed "from the perspective of a reasonable officer on the scene." *Kingsley*, 576 U.S. at 397. The Court considers factors including, but not limited to, "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."[4] *Id.*

---

[4] In addition, a state official can be held liable under section 1983 "for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence." *Abreu v. Bascue*, No. 9:18-CV-0186 (MAD/ATB), 2018 WL 11466956, at *13 (N.D.N.Y. May 1, 2018). Liability for failure to intervene "can arise where a prison corrections officer fails to prevent another corrections officer from committing a constitutional violation if (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Delano v. Rendle*, No. 9:13-CV-00070 (NAM/TWD), 2016 WL 4146476, at *11 (N.D.N.Y. July 12, 2016), *report and recommendation adopted*, No. 9:13-CV-70 (NAM/TWD), 2016 WL 4133542 (N.D.N.Y. Aug. 3, 2016) (internal quotation marks omitted).

Plaintiff alleges that Marshals Ro and Muller and Investigator Chrostowski subjected him to an unjustified level of force after he verbally corrected the prosecutor during closing arguments. Compl. ¶¶ 18–25.  At this juncture, Plaintiff's allegations—taken as true and liberally construed in his favor—are sufficient to permit him to proceed on his claims against Marshal Ro and Muller and Investigator Chrostowski for violation of his Fourteenth Amendment right to be free of excessive force.

## B.  First Amendment Retaliation

Although Plaintiff's allegations are not entirely clear, it appears he is asserting that Defendants retaliated against him for speaking during the prosecutor's closing argument.

To prevail on a First Amendment retaliation claim, a plaintiff must show:  "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019).

For initial review purposes, the Court will treat Plaintiff's alleged interruption of the prosecutor's closing argument as protected speech under the First Amendment.  Arguably, parties may have a right to present their arguments in court.  *See Mezibov v. Allen*, 411 F.3d 712, 718 n.3 (6th Cir. 2005) (recognizing that Supreme Court law "arguably grants some limited First Amendment rights to parties to present legal arguments to a court"); *but see Illinois v. Allen*, 397 U.S. 337 (1970) (holding that removal of a defendant from a courtroom for disruptive conduct after repeated warnings about his conduct does not violate the defendant's Sixth Amendment rights); *Paige v. Eckert*, No. 16-CV-6802 (MKB), 2020 WL 9816017, at *10 (E.D.N.Y. July 8, 2020), *aff'd*, 850 F. App'x 59 (2d Cir. 2021) (summary order) (explaining that a criminal defendant

7

who disrupts trial proceeding constructively waives any constitutional due process right to be present at all trial stages). Because Plaintiff's alleged outburst concerned the merits of his case, and because it does not appear especially disruptive or designed to delay the proceeding, the Court assumes, without deciding, that Plaintiff's speech may qualify as protected under the First Amendment. Plaintiff's allegations also satisfy the remaining elements of a First Amendment retaliation claim: Defendants Ro, Muller, and Chrostowski physically restrained Plaintiff in order to silence his (potentially) protected speech.

For these reasons, Plaintiff may pursue a First Amendment retaliation claim against Marshal Ro and Muller and Investigator Chrostowski. Plaintiff may do so against these Defendants only in their individual capacities, not in their official capacities.

### C. Medical Indifference

Plaintiff alleges that he was denied medical treatment by Defendant Richard for his injuries, despite several requests.[5]

As Plaintiff is not specific as to the dates of the alleged denial of treatment, the Court will assume his claim arises both as a pretrial detainee and a post-conviction prisoner. Claims of pretrial detainees involving excessive force and indifference to medical needs are considered under the Due Process Clause of the Fourteenth Amendment, whereas claims brought by a sentenced prisoner are considered under the cruel and unusual punishment clause of the Eighth Amendment. *See Kingsley*, 576 at 397–98; *Darnell v. Pineiro*, 849 F.3d 17, 29–34 & n.9 (2d Cir. 2017); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 717–18 (S.D.N.Y. 2017).

---

[5] The Court assumes, because the complaint does not state otherwise, that Plaintiff was housed at MacDougall CI both during his trial and after his conviction, and that Defendant Richard allegedly deprived him of medical care at both stages.

*1. Fourteenth Amendment Medical Indifference*

From the time of the alleged events at his criminal trial in May of 2022 through August 29, 2022, when he was sentenced, Plaintiff was a pretrial detainee. Therefore, claims of denial of medical treatment before August 29, 2022, must be analyzed under the Fourteenth Amendment. A claim that a prison official has acted with deliberate indifference under the Fourteenth Amendment involves analysis of two elements: (1) that the plaintiff was subjected to an objectively serious condition or medical need; and (2) that the defendant acted "with at least deliberate indifference" to the challenged condition or need. *Darnell*, 849 F.3d at 29; *Charles v. Orange Cnty.*, 925 F.3d 73, 86–87 (2d Cir. 2019). Here, Plaintiff has alleged, for purposes of initial review, that he had a serious medical need—a lower back injury and a hip contusion—and that Defendant Richard allegedly acted with deliberate indifference in refusing to see him, despite multiple requests. Plaintiff may therefore proceed on his Fourteenth Amendment deliberate indifference claim for damages against Defendant Richard in her individual capacity.[6]

*2. Eighth Amendment Medical Indifference*

To state an Eighth Amendment medical indifference claim, a prisoner must show that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (summary order) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)). A prisoner must allege facts to suggest that the defendants acted not merely carelessly or negligently, but with a

---

[6] For the same reasons discussed above concerning Eleventh Amendment immunity, Plaintiff may not pursue any official capacity damages claims against Defendant Richard, a state employee.

subjectively reckless state of mind akin to criminal recklessness. *Dunbar v. Dep't of Correction*, No. 3:22-CV-627 (JAM), 2023 WL 143164, at *5 (D. Conn. Jan. 10, 2023).

For the same reasons that Plaintiff is permitted to proceed with his Fourteenth Amendment deliberate indifference claim against Defendant Richard relating to his lack of medical treatment as a pretrial detainee, he can pursue his Eighth Amendment claim against Defendant Richard relating to lack of medical treatment after the date of his sentencing. Plaintiff alleges that Richard has not seen him for his injuries related to the incident on May 4, 2022, and that he continues to suffer while housed at MacDougall CI. Plaintiff may therefore proceed on his Eighth Amendment deliberate indifference claim for damages against Defendant Richard in her individual capacity.

### 3. *Injunctive Relief*

Plaintiff seeks injunctive relief against Defendant Richard, requiring that she treat him and refer him to appropriate specialists. Although a plaintiff cannot pursue a damages action against a state official in his or her official capacity, a plaintiff can pursue prospective injunctive relief against a state employee defendant in his or her official capacity. The Court will allow Plaintiff to proceed with his claims against Defendant Richard in her official capacity, insofar as they seek prospective injunctive relief.

### D. Supplemental Jurisdiction over State Law Assault and Battery Claims

This court can exercise supplemental jurisdiction over a state law claim if: (1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of

operative fact. *Baltas v. Dones*, No. 3:22-CV-38 (MPS), 2022 WL 1239989, at *18 (D. Conn. Apr. 27, 2022) (citing *Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), abrogated on other grounds, 239 F.3d 246 (2d Cir. 2001)); *see also Graham v. Connor*, 490 U.S. 386 (1989); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). A district court has discretion either to retain or decline supplemental jurisdiction over a state law claim asserted against a defendant against whom there are no federal claims pending. *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (noting that the court can exercise supplemental jurisdiction over a state law claim even if "asserted against a party different from the one named in the federal claim" but "[t]he fact that the district court has the power to hear these supplemental claims does not mean, of course, that it must do so."). Instead, it may decline to exercise its power based on the factors laid out in 28 U.S.C. § 1367(c)); *Kaplan v. Cnty. of Orange*, 528 F. Supp. 3d 141, 160–61 & n.6 (S.D.N.Y. 2021) (declining to exercise jurisdiction over state law claims against certain defendants against whom no federal claims were pending; discussing discretion to do so; and citing cases).

As there are no federal claims pending against Attorney Dwyer, the Court declines to exercise supplemental jurisdiction over any state law claims asserted against him. The Court will, however, consider whether Plaintiff has alleged plausible state assault and battery claims against Defendants Marshals Ro and Muller and Investigator Chrostowski.

Under Connecticut law, "liability for battery arises if (a) a person acts intending to cause a harmful or offensive contact with the person of the other or a third person and (b) a harmful contact with the person of the other directly or indirectly results." *Simms v. Chaisson*, 277 Conn. 319, 331 (2006) (cleaned up) (quoting 1 Restatement (Second), Torts § 13 (1965)). "Liability for

assault arises if (a) a person acts intending to cause a harmful or offensive contact with the person of the other and (b) the other is thereby put in such imminent apprehension." *Id.* (cleaned up) (quoting 1 Restatement (Second), Torts, § 21). To "constitute an actionable assault and battery there must have been an unlawful force applied to one person by another." *Moriarty v. Lippe*, 162 Conn. 371, 389 (1972). For purposes of initial review, Plaintiff's allegations are sufficient to suggest plausible claims of state law assault and battery against State Marshals Ro and Muller and State Investigator Chrostowski in their individual capacities.

## ORDERS

For the foregoing reasons, the court enters the following orders:

The case shall proceed on Plaintiff's claims for:

(1) a Fourteenth Amendment violation based on the use of excessive force against State Marshals Ro and Muller and State Investigator Chrostowski in their individual capacities;

(2) Fourteenth and Eighth Amendment violations based on medical indifference by Akina Richard in her individual capacity for damages, and in her official capacity for prospective injunctive relief;

(3) a First Amendment violation based on retaliation for Plaintiff's protected speech against State Marshals Ro and Muller and State Investigator Chrostowski, in their individual capacities;

(4) state law assault and battery claims against State Marshals Ro and Muller and State Investigator Chrostowski in their individual capacities.

All other claims are **DISMISSED**. The Clerk of Court is instructed to **TERMINATE** Defendant Dwyer from this action.

Plaintiff has two options as to how to proceed in response to the Initial Review Order**:**

**OPTION ONE**

If Plaintiff wishes to proceed on his claims set forth in items one through four immediately above against Defendants Marshals Ro and Muller, State Investigator Chrostowski, and Medical Provider Akina Richard, he may do so immediately.   If Plaintiff selects this option, he shall file a notice on the docket on or before January 16, 2024, as to the claims set forth in this paragraph. The Court will then begin the effort to serve process only on Defendants Ro, Muller, Investigator Chrostowski, and Medical Provider Richard in their individual capacities and on Defendant Richard in her official capacity.

**OPTION TWO**

Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed, in order to attempt to state a viable claim, he may file an amended complaint by January 16, 2024.  An Amended Complaint, if filed, will completely replace the Complaint, and the Court will not consider any allegations made in the original Complaint in evaluating any Amended Complaint. The Court will review any Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein.  If Plaintiff elects to file an Amended Complaint, his complaint this IRO addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by January 16, 2024, the Court will presume that Plaintiff wishes to proceed on his complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Change of Address.**   If Plaintiff changes his address at any time during the litigation of

this case, Local Rule 83.1(c)2 provides that he **MUST** notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or counsel for Defendants of his new address, if Defendants have appeared through counsel.

**SO ORDERED** at Hartford, Connecticut, this 14th day of December, 2023.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE