UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER RODRIGUEZ, | ) | 3:23-CV-1258 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT F. DWYER, JR., *et al.*, | ) | |
| *Defendants*. | ) | December 19, 2024 |

RULING ON MOTION TO AMEND

Plaintiff Christopher Rodriguez, a sentenced inmate in the custody of the Connecticut Department of Correction ("DOC") housed at MacDougall-Walker Correctional Institution ("MacDougall CI"), filed this civil rights complaint under 42 U.S.C. § 1983.[1]  ECF No. 1.  He now moves for leave to amend his complaint.   For the following reasons, the Court grants in part, and denies in part, the motion.  Mot. to Amend, ECF No. 29.  Specifically, Plaintiff will be allowed to proceed with his Fourteenth Amendment excessive force and state law assault and battery claims against State Marshals Johndro and Muller and State Investigator Chrostowski, and his Eighth Amendment claim against Akina Richard.   The motion for leave to amend is denied in all other respects, including insofar as it attempts to revive claims against former Defendant Robert Dwyer and state claims against new proposed Defendant State Marshal Judd.

I.    PROCEDURAL BACKGROUND

In his original complaint, Plaintiff asserted violation of his rights under the United States Constitution against Special Public Defender Robert F. Dwyer, Jr., Connecticut State Judicial

---

[1] The Court may "take judicial notice of relevant matters of public record."  *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).   A search on the publicly available DOC website under the inmate search function using Plaintiff's inmate number, 230564, shows that Plaintiff was admitted to DOC on October 4, 2018, and sentenced on August 29, 2022, to seventeen years of incarceration.   *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=230564.

Marshals Johndro[2] and Muller, State Investigator Chrostowski, and MacDougall CI Medical Provider Akina Richard.[3]   Compl., ECF No. 1.

On initial review, the Court permitted Plaintiff to proceed on the following claims:   (1) a Fourteenth Amendment violation based on the use of excessive force against State Judicial Marshals Johndro and Muller and State Investigator Chrostowski in their individual capacities; (2) Fourteenth and Eighth Amendment violations based on medical indifference by Akina Richard in her individual capacity for damages, and in her official capacity for prospective injunctive relief; (3) a First Amendment violation based on retaliation for Plaintiff's protected speech against State Judicial Marshals Johndro and Muller and State Investigator Chrostowski, in their individual capacities; and (4) state law assault and battery claims against State Judicial Marshals Johndro and Muller and State Investigator Chrostowski in their individual capacities.   Initial Review Order, ECF No. 9 at 12.   The Court dismissed Plaintiff's claims against Attorney Dwyer as not cognizable because he was not a state actor for purposes of section 1983.   *Id.* at 4.

On December 27, 2023, Plaintiff filed a notice indicating that he wished to proceed to service on the claims determined to be plausible as set forth by the Court's Initial Review Order. Notice, ECF No. 10.   Defendants Chrostowski, Johndro, Muller, and Richard filed an answer to the complaint on March 25, 2024.   Answer, ECF No. 20.

On May 17, 2024, Plaintiff filed this pending motion to amend the complaint, stating that he wanted to add State Judicial Marshal Judd as a defendant, clarify certain aspects of his claims, and submit additional exhibits.   ECF No. 29.   After the Court noted that it had received two versions of Plaintiff's proposed Amended Complaint ("AC"), ECF No. 31, Plaintiff filed a

---

[2] Plaintiff previously referred to Defendant Johndro as "John Ro" in his original complaint.   The Court refers to this Defendant according to the spelling provided in the case caption.
[3] Plaintiff spells this Defendant's last name as "Richards" in his proposed amended complaint.   The Court refers to this Defendant according to the spelling provided in the case caption.

proposed AC against the same individual defendants (including Attorney Dwyer) and State Judicial Marshal Judd.   Proposed Am. Compl., ECF No. 33.[4]

Defendants have filed a response to Plaintiff's motion to amend, arguing that the motion should be denied as to every claim asserted in the proposed AC except for the Fourteenth Amendment excessive force claims and state law assault and battery claims against Defendants Johndro, Muller, and Chrostowski in their individual capacities.   Defs.' Resp. Br., ECF No. 35 at 7.   Further, Defendants believe that the proposed AC has demonstrated that Plaintiff's medical deliberate indifference claim against Defendant Richard has been improperly joined to this action, and thus should be severed or dismissed.   *Id.* at 17.

## II.    LEGAL STANDARD

Under Rule 15(a) of the Federal Rules of Civil Procedure, a plaintiff may amend his complaint once as a matter of course within twenty-one days after service of the complaint or within twenty-one days after service of a responsive pleading.   *See* Fed. R. Civ. P. 15(a)(1)(A)– (B).   Otherwise, the plaintiff may amend his complaint only with "the opposing party's written consent or the court's leave," which should be freely given "when justice so requires."   Fed. R. Civ. P. 15(a)(2).   A district court "has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party."   *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).

---

[4] As Defendants note, Plaintiff's proposed AC names only Defendant Dwyer in the case caption, resulting in the termination of all Defendants on the docket except Defendant Dwyer.   Although Plaintiff has failed to comply with Federal Rule of Civil Procedure 10(a) to include in the case caption the name of every defendant against whom he asserts claims, the Court will consider whether his proposed AC includes claims that should proceed against all Defendants mentioned in the proposed AC, even if such defendants are not named in the case caption.   *See Imperato v. Otsego Cnty. Sheriff's Dep't*, No. 3:13-cv-1594 (BKS/DEP), 2016 WL 1466545, at *26 (N.D.N.Y. Apr. 14, 2016) ("[C]ourts have found *pro se* complaints to sufficiently plead claims against defendants not named in the caption when there are adequate factual allegations to establish that the plaintiff intended them as defendants." (alteration in original) (collecting cases)).

"Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). The standard for denying leave to amend based on futility "is the same as the standard for granting a motion to dismiss." *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Delay alone, in the absence of bad faith or prejudice, is not a sufficient reason for denying a motion to amend. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). In determining what constitutes prejudice, the court considers whether the amendment would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block*, 988 F.2d at 350 (collecting cases).

The pleading standards from the Federal Rules apply to self-represented parties. It is true that courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted). But at the same time, a *pro se* complaint must meet the basic pleading standards outlined above to survive a motion to dismiss. *Id.* (citing *Twombly*, 550 U.S. at 570).

### III.    ALLEGATIONS OF THE PROPOSED AMENDED COMPLAINT

At the time of the incident on which Plaintiff's claims are based, Plaintiff was a pretrial detainee.  ECF No. 33 ¶ 12.  On May 4, 2022, he attended his criminal trial at Connecticut Superior Court in New Britain, Connecticut.  *Id.* ¶¶ 12–13.

During the trial proceeding, the prosecutor repeatedly referred to Plaintiff's daughter as his step-granddaughter.  *Id.* ¶ 14.  At the jury charge conference, Plaintiff advised the trial court that the jury should be informed that the prosecutor erroneously referred to his biological daughter as his step-granddaughter.  *Id.* ¶ 15.  His request was denied.  *Id.*

During closing arguments, the prosecutor again identified Plaintiff's daughter as his step-granddaughter.  *Id.* ¶ 16.  Plaintiff asked his court-appointed attorney, Attorney Dwyer, to correct the prosecutor's error for the jury and the record.  *Id.* ¶ 17.  Attorney Dwyer refused to do so and was rude and dismissive.  *Id.* ¶ 18.  When Plaintiff heard the prosecutor refer again to his biological daughter as his step-granddaughter, Plaintiff stood up and declared to the jury that the individual referred to as his step-granddaughter was his daughter.  *Id.* ¶ 20.

Immediately thereafter, Attorney Dwyer jumped from his seat, covered Plaintiff's mouth and nose, and forcibly pushed his head back in a violent attempt to have Plaintiff sit back down.  *Id.* ¶ 21.  Plaintiff did not confront Defendant Dwyer in a threatening manner.  *Id.* ¶ 22.

Marshal Johndro grabbed Plaintiff from behind and placed him in a chokehold, which caused Plaintiff to fall backwards into his chair.  *Id.* ¶ 23.  While Plaintiff was being bent backwards, State Investigator Chrostowski ran over and tackled Plaintiff, pushing him backwards and twisting his arm.  *Id.* ¶ 24.  At this time, Defendant Johndro still had Plaintiff in a chokehold.  *Id.* ¶ 25.  Plaintiff's leg shackle broke from his ankles due to the force applied to bend him backwards.  *Id.* ¶ 26.  Marshal Muller then yelled that Plaintiff's shackles were off and grabbed

Plaintiff's arm attempting to cuff him.  *Id.* ¶ 27.  At no point during this "commotion" was Defendant Johndro told to stop using the chokehold on Plaintiff.  *Id.* ¶ 30.

Once Plaintiff was removed from the courtroom, Defendant Chrostowski told Plaintiff that he should stop raping fifteen-year-old girls and threatened to stab him with a pen if he did not comply with the order to enter the holding cell.  *Id.* ¶ 28.  After Plaintiff entered the holding cell, Defendant Johndro secured Plaintiff's shackles.  *Id.* ¶ 29.

As he was leaving the courthouse, Plaintiff spoke with State Judicial Marshal Judd and requested to be taken to the hospital for medical attention.  *Id.* ¶ 31.  Plaintiff felt a sharp pain from his back though his hip and had trouble walking "because something had snapped."  *Id.* Marshal Judd told Plaintiff that he had to wait until he returned to DOC to receive medical attention.  *Id.* ¶ 32.

Once at Hartford Correctional Center ("HCC"), Plaintiff requested to be taken to a hospital. *Id.* ¶ 33.  He was advised that HCC was not responsible for sending Plaintiff to the hospital because his injury did not occur at HCC, and that the court was supposed to have sent him to the hospital.  *Id.* ¶ 34.

On May 5, 2022, Plaintiff returned to the courthouse, where he again spoke to Marshal Judd to request that he be sent to the hospital for medical attention.  *Id.* ¶ 35.  Marshal Judd stated that Plaintiff would be taken to the hospital, but Attorney Dwyer wanted to speak with him first. *Id.* ¶ 36.  Plaintiff later met with Attorney Dwyer and complained to him about his "messed up" conduct.  *Id.* ¶ 37.  Attorney Dwyer told him to shut up about the incident.  *Id.* ¶ 38.  Plaintiff was later transported to the hospital—where he was diagnosed with lower back pain and a contusion of the hip—and then returned to HCC.  *Id.* ¶¶ 39–40.

On May 6, 2022, Plaintiff filed a complaint with the Connecticut State Troopers concerning

6

the incident on May 4, 2022. *Id.* ¶ 41. The State Troopers contacted the New Britain Court Marshal's Office and were able to obtain a report and surveillance video relevant to the incident on May 4, 2022. *Id.* ¶ 42. Defendant Dwyer was also interviewed in connection with Plaintiff's complaint. *Id.* During the interview, Attorney Dwyer failed to state that he attempted to assault Plaintiff. *Id.* ¶ 43. Plaintiff thereafter filed a grievance complaint against Attorney Dwyer with the Statewide Grievance Committee, to which Attorney Dwyer responded. *Id.* ¶¶ 44, 46. Plaintiff claims that Attorney Dwyer's response "admit[ed] that he attempted to shield Plaintiff from the jury," but he failed to state that Plaintiff had made an attempt to assault or charge at him. *Id.* ¶¶ 46–47.

Plaintiff received a copy of the incident report prepared by Defendant Johndro. *Id.* ¶ 45. It indicated that Plaintiff had tried to charge at Attorney Dwyer. *Id.*

Plaintiff complained about side pain while detained at HCC, *id.* ¶ 48, about back pain while detained at Cheshire Correctional Institution ("Cheshire CI"), *id.* ¶ 49, and about lower back pain while detained at MacDougall CI, *id.* ¶ 50. In each instance he was seen by medical staff and advised to follow up with medical staff if his symptoms should worsen. *Id.* ¶¶ 48–50.

Since his transfer to MacDougall CI, Plaintiff has written numerous requests for medical attention for his pain. *Id.* second ¶ 49.[5] He was referred to sick call and advised that his complaint was referred to his provider, Defendant Richard. *Id.*

Plaintiff still suffers from back pain that travels down his leg into his foot, and he continues to submit requests about his need for medical attention due to his severe pain and ineffective pain medication. *Id.* second ¶¶ 50–51.

---

[5] After Paragraph 50 in the proposed AC, Plaintiff reuses the number "49" to number his paragraphs. *See* ECF No. 33 at 12–13. Thus, the numbers 49 and 50 are used twice, and the paragraph numbers after Paragraph 50 are off by two. For ease of reference, the Court follows Plaintiff's numbering despite the repetition of 49 and 50.

## IV.    DISCUSSION

The Court holds that Plaintiff's motion for leave to amend should be granted in part and denied in part.

Because Plaintiff filed his motion to amend more than 21 days after Defendants filed their Answer, the Rule 15(a)(2) standard applies.   Defendants argue that the motion to amend should be denied because the proposed AC:  (1) fails to allege plausible constitutional claims against Defendants Dwyer, Judd, and Richard; (2) raises no inference of First Amendment retaliation by Defendants Johndro, Muller, and Chrostowski; and (3) improperly joins the Eighth Amendment claim against Richard.   *See* ECF No. 35.   Defendants interpose no challenge to Plaintiff's Fourteenth Amendment excessive force and state common law assault and battery claims against Defendants Johndro, Muller, and Chrostowski, which were allowed to proceed after the Court's Initial Review Order.   *See id.* at 7.

### A.   Attorney Dwyer

First, the Court denies Plaintiff's motion to amend, insofar as it attempts to revive a section 1983 claim against Defendant Dwyer.

As an initial matter, although Defendants argue that Plaintiff should not be allowed to restate his claims against Defendant Dwyer, it is not clear to the Court that Defendants ought to have a say in whether the claims against Dwyer should proceed.   Dwyer was dismissed from the case through the Court's Initial Review Order.   *See* ECF No. 9 at 5.   As such, no counsel has appeared on his behalf.   Counsel for Defendants Johndro, Muller, Chrostowski, and Richard does not represent Dwyer.   These Defendants have not articulated why allowing any potential claims against Dwyer would materially affect their rights.   Therefore, the Court will not consider the arguments of Defendants Johndro, Muller, Chrostowski, and Richard in relation to the proposed

claims against Dwyer.

The Court independently finds, however, that the proposed AC cannot state a cognizable claim against Dwyer, as it suffers from the same defects as the original complaint with respect to the allegations against him.   On initial review, the Court explained that a court-appointed attorney performing a lawyer's traditional functions as counsel to a party is not a state actor under section 1983, ECF No. 9 at 4, and Plaintiff had neither "alleged facts to show that Attorney Dwyer engaged in conduct that could be considered fairly attributable to the state"[6] or to support an inference that he engaged in a conspiracy with state actors.   *Id.* at 5 & n.3.   In addition, the Court declined to exercise supplemental jurisdiction over any state law claim asserted against Attorney Dwyer, as there remained no federal claims pending against him.   *Id.* at 11.

Although Plaintiff alleges new facts in the proposed AC about Attorney Dwyer's conduct after May 4, 2022, these facts do not cure the pleading deficiencies identified in the Initial Review Order.   Specifically, the new allegations do not suggest that Attorney Dwyer may be considered to have engaged in conduct that could be considered fairly attributable to the state or that he engaged in a conspiracy with state actors.   An amendment can be denied on futility grounds if it fails to cure prior deficiencies or fails to state a claim for relief.   *Panther Partners Inc.*, 681 F.3d at 119.   As Plaintiff's proposed AC still asserts section 1983 claims against Attorney Dwyer that are not cognizable, and as the Court declines to exercise supplemental jurisdiction over any state law claims against Dwyer, Plaintiff's motion to amend is denied as to his allegations against Defendant Dwyer.

---

[6] To show that the actions of a private party may be attributable to the state, thereby making the private party subject to liability under section 1983, the plaintiff must show "(1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State."   *Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009) (summary order).   "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state."   *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

B. <u>State Judicial Marshal Judd</u>

Next, the Court holds that the motion for leave to amend must be denied insofar as it seeks to add State Judicial Marshal Judd as a defendant.

Plaintiff alleges that Marshal Judd denied his request to be sent to the hospital and advised him to seek medical treatment at his DOC facility on May 4, 2022; but when Plaintiff returned to court the next day, Marshal Judd informed him that he would be transported to the hospital.   ECF No. 33 ¶¶ 31–36.   Plaintiff alleges that he was diagnosed with a hip contusion at the hospital on May 5, 2022.  *Id.* ¶ 39.

Plaintiff seeks to add a claim of medical indifference against Marshal Judd, which would fall under the Fourteenth Amendment because Plaintiff was a pretrial detainee at the time he requested medical treatment from Marshal Judd.  *See Charles v. Orange Cnty.*, 925 F.3d 73, 85 (2d Cir. 2019) (pretrial detainee deliberate indifference claims analyzed under the Fourteenth Amendment).   Defendants maintain that Plaintiff has not adequately alleged that Judicial Marshal Judd violated the Fourteenth Amendment, and therefore, the amendment should be denied as futile. ECF No. 35 at 10–13.   The Court agrees with Defendants.[7]

A claim that a prison official has acted with deliberate indifference under the Fourteenth Amendment involves analysis of two elements:   (1) that the plaintiff was subjected to an objectively serious condition or medical need; and (2) that the defendant acted "with at least deliberate indifference" to the challenged condition or need.  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *Charles*, 925 F.3d at 86–87.   A "sufficiently serious" deprivation of a plaintiff's

---

[7] Here, too, the present Defendants' interest in precluding the amendment against Judd is not clear.   But because the Attorney General's Office represents the other two Judicial Marshal Defendants, it appears reasonably certain that counsel for these Defendants would likewise represent Judd, were the claims against him allowed to proceed. Because of this likely identity of counsel, the Court will consider Defendants' arguments regarding the addition of claims against Judd.

right to due process can exist if the plaintiff suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). But "[w]hen the basis for a prisoner's claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment," a court "examines whether the delay itself created a risk of harm." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018). A degenerative medical condition that does not initially appear serious may, in fact, be serious if it will "result in further significant injury or the unnecessary and wanton infliction of pain" when left untreated or neglected for a long period of time. *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000). "In considering whether a delay caused a risk of harm, a court may consider the absence of adverse medical effects or demonstrable physical injury." *Valdiviezo*, 752 F. App'x at 32.

"[I]n in the context of the Fourteenth Amendment," the subjective prong means that the defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Sanchez v. Nassau Cnty.*, 662 F. Supp. 3d 369, 406 (E.D.N.Y. 2023) (quoting *Darnell*, 849 F.3d at 35).

Drawing all reasonable inferences in Plaintiff's favor and affording him the solicitude owed to a *pro se* litigant, the Court finds that Plaintiff has sufficiently alleged the objective element of a Fourteenth Amendment claim against Judd. Defendants assert that the proposed AC fails to allege facts to support an inference Plaintiff suffered an objectively serious harm as a result of the one-day delay in his receiving medical attention. But, as Plaintiff has alleged that he suffers

continuing, severe pain in his hip and leg, ECF No. 33 second ¶¶ 50–51, the Court cannot conclude that Plaintiff's Fourteenth Amendment claim is futile for failure to satisfy the objective element.

Plaintiff has not, however, alleged facts sufficient to satisfy the subjective element of a Fourteenth Amendment indifference claim against Judicial Marshal Judd.   No facts indicate that Judd had any awareness that a one-day delay in Plaintiff's transport to the hospital posed an excessive risk of harm to Plaintiff's health.   Nor do Plaintiff's allegations reflect that Marshal Judd was aware on May 4, 2022, that Plaintiff could not receive treatment at HCC, and therefore, would sustain a delay for his medical treatment.   To the extent Judd failed in discharging his duties when he advised Plaintiff to seek treatment at the correctional facility, simple negligence of prison personnel does not constitute deliberate indifference.   *See Darnell*, 849 F.3d at 36 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015)) (explaining mere negligence is not sufficient for Fourteenth Amendment violation).   Absent any facts to suggest Judd's indifference to Plaintiff's excessive risk of harm, the Court denies the motion to amend to add the Fourteenth Amendment claim against Judd.

### C. Defendant Richard

As to Defendant Richard, the Court holds that Plaintiff may proceed with his Eighth Amendment deliberate indifference claim.

On initial review, the Court—assuming that Defendant Richard was Plaintiff's medical provider at the time of his trial and after his conviction—permitted Plaintiff to proceed against Richard on Fourteenth Amendment medical indifference claims for damages (pertaining to Plaintiff's time as a pretrial detainee) and Eighth Amendment medical indifference claims for damages and injunctive relief (pertaining to Plaintiff's time as a sentenced inmate).   ECF No. 9 at 9–10; *see id.* at 8 n.5.   Defendants argue that Plaintiff's proposed AC clarifies he was housed

at several different DOC facilities—HCC, Cheshire CI, and MacDougall CI—and that Defendant Richard only became his medical provider at MacDougall CI.  *See* ECF No. 33 ¶¶ 48–51. Defendants maintain that Plaintiff appears to be alleging a claim against Richard concerning back pain unrelated to the alleged excessive force incident from May of 2022, and that such a claim should be severed from this case as a result.  *See* ECF No. 35 at 17.  Defendants also contend that, in any event, medical records attached to the proposed AC demonstrate that he in fact received medical attention from DOC medical staff at MacDougall CI for his back pain, and thus did not sustain a medical deprivation in violation of the Eighth Amendment.  *See id.* at 16–19.

### 1. Misjoinder

The Court holds that Plaintiff's claim against Defendant Richard is not improperly joined in this action.

Federal Rule of Civil Procedure 20(a)(2) permits joinder of multiple defendants in one action if:  (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences"; and (2) "any question of law or fact common to all defendants will arise in the action."  Under the first requirement of Rule 20(a), the determination of whether something involves the same "transaction" or "occurrence" is conducted on a case-by-case basis.  *Dixon v. Scott Fetzer Co.*, 317 F.R.D. 329, 331 (D. Conn. 2016).  Whether claims arise out of the same transaction depends on the logical relationship between the claims and whether the "essential facts" of the claims "are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."  *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).  The same transaction requirement "means that there must be some allegation that the joined defendants conspired or acted jointly."  *Arista Records LLC v. Does 1–4*, 589 F.

Supp. 2d 151, 154 (D. Conn. 2008).  The second requirement—that a question of law or fact common to all defendants will arise in the action—is met where "the court finds that there is 'substantial' overlap in questions of law or fact across the claims."  *Ardolf v. Weber*, 332 F.R.D. 467, 479 (S.D.N.Y. 2019).

The Court cannot conclude, under these standards, that Defendant Richard is improperly joined in this action, or that Plaintiff's claim involving her should be severed.  While Defendants seek to characterize Plaintiff's complained-of back injury as resulting solely from osteoarthritis, the exhibits Plaintiff has submitted with his proposed AC make clear that he complained of back pain stemming from the incident in May of 2022 as early as four days after the incident, *see* ECF No. 33 at 69, through July of 2022, *id.* at 72, 76, and again through October of 2022, *id.* at 81.  He was directed to Defendant Richard in February of 2023 at MacDougall CI.  *See id.* at 93.  While the results of imaging conducted in June of 2022 showed osteoarthritis of the lumbar spine, *see id.* at 85, the Court cannot, at this stage, conclude that Plaintiff's back pain resulted *only* from osteoarthritis, and is not at all attributable to the alleged excessive force.  Thus, the medical deliberate indifference claim alleged against Defendant Richard plausibly arises from the same transaction or occurrence—the incident in court on May 4, 2022—as the claims against the other Defendants.  And there is a common question of fact that binds the claim against Defendant Richard to those of the other Defendants:  whether the alleged excessive force caused Plaintiff's injury, for which Defendant Richard treated Plaintiff.

Moreover, even if the claim against Defendant Richard were misjoined, judicial economy would not be served by severing this Eighth Amendment claim.  Rule 21 provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  "If a court concludes that defendants have been improperly joined under Rule 20, it has

broad discretion under Rule 21 to sever parties or claims from the action." *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159−60 (S.D.N.Y. 2009).   In considering whether to drop a party, courts may consider three additional factors even if the requirements of Rule 20(a)(2) are met: "(1) whether severance would serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence." *Id.* at 171.

Notably, severance would likely delay a resolution of whether Defendant Richard acted with medical indifference if Plaintiff pursued his Eighth Amendment claim against her in a separate action.   Defendant Richard would have to be served again and the parties would need to conduct discovery prior to any resolution of the claim.   Accordingly, the Court declines to exercise its discretion to sever this claim.

### 2. *Eighth Amendment Medical Indifference*

The Court holds that Plaintiff has plausibly alleged an Eighth Amendment claim against Defendant Richard in the proposed AC.

First, the Court concludes Plaintiff was a sentenced prisoner at the time he was treated by Defendant Richard, so the Eighth Amendment applies.   Plaintiff was sentenced on August 29, 2022, and Plaintiff was referred to Defendant Richard in February of 2023.   ECF No. 33 at 93. Plaintiff's medical indifference claim against Richard should therefore be reviewed under the Eighth Amendment.   *See* ECF No. 9 at 8 (citing cases).   The legal standards governing the Eighth Amendment medical indifference claim set forth in the original Initial Review Order are expressly incorporated herein.

Plaintiff's proposed AC alleges that he has submitted requests for medical treatment due to intolerable backpain and ineffective medication.   ECF No. 33 second ¶¶ 49–51.   Defendants

maintain that Plaintiff is merely disagreeing with Defendant Richard's medical decisions regarding his treatment, which cannot support a constitutional claim. *See* ECF No. 35 at 19 (citing cases); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *see also Gonzalez v. Sarreck*, No. 08 Civ. 3661, 2011 WL 5051341, at *18 (S.D.N.Y. Oct. 24, 2011) (noting "disagreements over medications, diagnostic techniques, forms of treatment, or the need for specialists or the timing of their intervention are insufficient under § 1983"). In most instances, an inmate's challenge to a provider's medical judgment will raise an issue of negligence or medical malpractice that is insufficient to amount to a constitutional claim. *See, e.g.*, *Boyd v. Deasis*, 524 F. Supp. 3d 128, 144 (W.D.N.Y. 2021) (holding that a pretrial detainee's disagreement with medical treatment was insufficient to support a constitutional deliberate indifference claim). And "[i]n certain instances, a physician may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan," as evident when treatment recommendations are not derived from "sound medical judgment," but rather from "ulterior motives." *Chance*, 143 F.3d at 703–04 (holding that plaintiff stated a claim of deliberate indifference by alleging that defendants recommended extracting his teeth because of monetary incentives).

Defendants' arguments for dismissal are more appropriate for consideration on a dispositive motion. Plaintiff's allegations are thin, but sufficient for pleading purposes to suggest continuing deliberate indifference by Richard to Plaintiff's need for medical attention. Accordingly, the Court will permit Plaintiff to proceed on his Eighth Amendment medical indifference claim against Richard in her individual and official capacities consistent with the Court's prior Initial Review Order. *See* ECF No. 9 at 9–10.

D.  First Amendment Retaliation

Finally, the Court holds that Plaintiff has abandoned any First Amendment retaliation claim that the Court read into the original complaint.

On initial review, the Court liberally interpreted the original complaint as seeking to allege a claim of First Amendment retaliation against Defendants Johndro, Muller, and Chrostowski for his speech during closing arguments.  ECF No. 9 at 7–8.  Plaintiff does not attempt to assert a First Amendment retaliation claim in the proposed AC, despite that the Court identified it as a possible claim in the Initial Review Order.  *See* ECF No. 33 at 15–18 (listing legal claims and omitting any reference to First Amendment retaliation); ECF No. 9 at 7–8.   An amended pleading "supersedes the original" pleading and "renders it of no legal effect."  *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020).   As Plaintiff appears to have abandoned any First Amendment retaliation claim, the Court will not permit such a claim to proceed.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend is GRANTED in part and DENIED in part.   Plaintiff is permitted to proceed on the following claims alleged in his proposed AC:

(1) Fourteenth Amendment violation based on the use of excessive force against State Marshals Johndro and Muller and State Investigator Chrostowski in their individual capacities, for damages;

(2) Eighth Amendment violation based on medical indifference by Akina Richard in her individual capacity for damages and her official capacity for injunctive relief; and

(3) State assault and battery claims against State Marshals Johndro and Muller and State Investigator Chrostowski in their individual capacities, for damages.

All other claims are DISMISSED.   The Clerk is instructed to docket the proposed AC,

ECF No. 33, as the Amended Complaint, and to list Johndro, Muller, Chrostowski, and Richard as Defendants in this action.

Discovery must be completed on or before December 26, 2024, and dispositive motions are due on or before January 27, 2025.  *See* ECF No. 21.

**SO ORDERED** at Hartford, Connecticut, this 19th day of December, 2024.

　　　　　　　　　　*/s/ Sarala V. Nagala*
　　　　　　　　　　SARALA V. NAGALA
　　　　　　　　　　UNITED STATES DISTRICT JUDGE